

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00407-CV

---

### IN THE INTEREST OF D.R.S., D.M.F., AND D.L.F., CHILDREN

---

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 13217, Honorable Jack M. Graham, Associate Judge Presiding

---

August 10, 2026

## MEMORANDUM OPINION

### Before PARKER, C.J., and YARBROUGH and PRATT, JJ.

In this accelerated appeal, appellant, Mother, seeks reversal of the trial court's judgment terminating her parental rights to her children, D.R.S., D.M.F., and D.L.F., in a suit brought by the Texas Department of Family and Protective Services.[1] By her appeal, Mother challenges the sufficiency of the evidence to support the statutory grounds for

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Mother," and to the children by their initials.  See TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

termination and the best-interest finding. We affirm the judgment terminating Mother's parental rights.

## BACKGROUND

Mother has three children, sixteen-year-old D.R.S., fourteen-year-old D.M.F., and thirteen-year-old D.L.F. The father of D.R.S. is R.P., and the father of D.M.F. and D.L.F. is D.F. Neither father appeals.

The Department became involved with Mother and the children on May 21, 2024, after receiving a report alleging negligent supervision. According to the report, "[Mother] was having thoughts of suicide . . . ." After police responded, Mother allegedly kicked one of the responding officers and was arrested. After Mother bonded out of jail, she continued talking about killing herself. The children stayed with Mother's boyfriend, H.S., for a few days while Mother was evaluated at the Pavilion, a behavioral health hospital. After Mother was discharged, she agreed to meet with Vanessa Jones, an investigator with the Department. However, Mother was not willing to allow the Department to provide any services or to assist her in obtaining counseling.

On June 21, 2024, H.S. called Jones and stated that Mother was "unhinged" and had made suicidal threats for the past two days. According to H.S., Mother and the children were living in a camper with no electricity and the conditions were "awful." He and Mother had ended their relationship, and he was concerned about the children's well-being because they were "in a bad situation."

On June 25, 2024, the Department received an additional intake with allegations of neglectful supervision. According to this intake, Mother and the children were living in a small camper trailer with seven dogs. The electricity and water had been shut off due to non-payment, and the floor was caving in. Mother's landlord told Jones that Mother was stealing electricity from him and she was going to be evicted for failing to pay rent. The Department filed its petition for protection, conservatorship, and termination, and requested emergency temporary managing conservatorship and possession of the children. In support of the Department's removal of the children, Jones provided an affidavit which summarized the Department's involvement with Mother thirteen times since 2017.[2]

When Jones informed Mother that the Department was removing the children, Mother refused to accept the order authorizing the children's removal and law enforcement was forced to assist the Department in effectuating the removal. The children were transported to the Pavilion for evaluation and were forensically interviewed. D.L.F. and D.R.S. made outcries of sexual abuse against Mother's former boyfriend, W.M. After an adversary hearing, the Department was named temporary managing conservator of the children.

The Department prepared a family service plan for Mother. According to Erica Flores, the caseworker from September of 2024 until August of 2025, Mother was mostly compliant with the plan and "lacked just a few things" to complete it. Mother continued to

---

[2] This detailed affidavit, which was admitted into evidence at the termination hearing, included allegations of physical abuse, physical neglect, neglectful supervision, and medical neglect concerning D.R.S., D.M.F., D.L.F., and other children residing with Mother and her then-boyfriend, W.M. None of the historical allegations outlined in the affidavit resulted in the removal of the children or the filing of a lawsuit.

live in the camper after the children were removed except for a two-month period during which she was employed and rented a house. She lost that job and, afterward, returned to live in the camper. She participated in virtual visits with D.M.F. and D.L.F. until she was incarcerated.

In May of 2025, Mother was arrested for two counts of cruelty to animals. She pleaded guilty and was sentenced to fifteen months in the State Jail Division of the Texas Department of Criminal Justice. She remained incarcerated at the time of trial. After she is released from prison, Mother plans to move into a rent house she has obtained in Skellytown and obtain employment.

Flores testified that all three children had behavioral issues. The children initially struggled but, by August of 2025, they were in therapy and doing well. The children were seeing a psychiatrist and were prescribed psychotropic medications. From December of 2024 until July of 2025, D.R.S. was placed with her father, R.P., in Kansas. The paternal grandmother of D.M.F. and D.L.F., who also lives in Kansas, instituted the process for them to be placed with her.

R.P. testified that he and his wife were requesting that D.R.S. be placed with them. She has her own room in their home, and they will enroll her in therapy to address her depression and mental health issues. If D.M.F. and D.L.F. are placed with the paternal grandmother, R.P. would help to facilitate visits between D.R.S., D.M.F., and D.L.F.

Sean Ryan replaced Flores as the caseworker at the end of August of 2025. He testified that the permanency plan for D.R.S. is family reunification with R.P. The

4

permanency plan for D.M.F. and D.L.F. is relative adoption with their paternal grandmother.

The trial court held a bench trial on December 3, 2025, adjudicating the Department's petition to terminate Mother's parental rights. The trial court terminated Mother's parental rights to the children on the grounds of endangering conditions and endangerment. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E).[3] The trial court also found termination was in the best interest of the children. *See* § 161.001(b)(2). R.P. was appointed permanent managing conservator of D.R.S. The Department was appointed permanent managing conservator of D.M.F. and D.L.F. Mother timely filed this appeal of the resulting judgment.

## APPLICABLE LAW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

5

her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id*.

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362. We affirm a termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

### STANDARD OF REVIEW

In reviewing for legal sufficiency, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344−45

6

(Tex. 2009). In reviewing for factual sufficiency, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id*. Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

Sufficiency of the Evidence—Subsections (D) and (E)

In her first and second issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's termination of her parental rights under subsections (D) and (E). Because termination under these subsections may justify termination of parental rights to other children in future cases, we must review both grounds, even though only one ground is sufficient to support termination. *In re R.R.A.*, 687 S.W.3d 269, 279 (Tex. 2024) (citing *In re N.G.*, 577 S.W.3d 230, 235–37 (Tex. 2019)).

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at

the child or that the child suffer injury. *In re N.K.*, 399 S.W.3d 322, 330 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). "Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id*. Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.*, 31 S.W.3d 347, 350–51 (Tex. App.—San

Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.). Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d at 503.

The Department presented evidence that, on the day the children were removed, two of them made outcries alleging sexual abuse by Mother's former boyfriend, W.M. A criminal case related to those allegations remains pending against W.M.[4] During a forensic interview, D.L.F. disclosed that W.M. physically and sexually abused him. He also stated that W.M. had similarly abused D.R.S. and D.M.F. D.R.S. stated that "she's already talked to someone [at the Department] about [the sexual abuse] and nothing was done."[5] When Jones questioned Mother about the allegations, Mother stated that the children did not tell her about the abuse until after she had ended her relationship with

---

[4] Caseworker Ryan testified that W.M.'s trial was scheduled for January 2026.

[5] The Department had previously investigated sexual abuse allegations in 2022 involving the children and W.M. and had determined that there was insufficient evidence to support the allegations.

W.M. and was no longer in a relationship with him. However, a series of text messages exchanged between Mother and her former boyfriend, H.S., contradicted that claim and reflected that Mother did not believe D.R.S. when she reported the abuse. Moreover, Mother admitted that, even after learning that W.M. was molesting D.R.S., she continued taking D.R.S. to W.M.'s apartment for approximately one year. The text messages further indicated that Mother did not end her relationship with W.M. until she learned that he was sexually abusing D.M.F.

Sexual abuse is conduct that endangers a child's physical or emotional well-being. *In re R.W.,* 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied) (quoting *In re R.G.,* 61 S.W.3d 661, 667 (Tex. App.—Waco 2001, no pet.)). Further, evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children. *Id.* Parental knowledge that an actual offense has occurred is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded that risk. *In re R.G.,* 61 S.W.3d at 667–68.

The evidence supports the conclusion that Mother knew W.M. was sexually abusing D.R.S. yet continued exposing her to W.M. for another year. *See In re M.H.*, No. 05-22-00017-CV, 2022 Tex. App. LEXIS 5631, at *16–17 (Tex. App.—Dallas Aug. 5, 2022, no pet.) (mem. op.) (parent's refusal to believe child's outcry and limit alleged abuser's access demonstrates pattern of conduct endangering child's physical or emotional well-being); *In re L.W.*, No. 01-18-01025-CV, 2019 Tex. App. LEXIS 2825, at *43 (Tex. App.—Houston [1st. Dist.] Apr. 9, 2019, pet. denied) (mem. op.) (evidence parent knows child is being sexually abused and does nothing supports findings that parent knowingly placed or allowed child to remain in conditions or surroundings that endangered physical or

11

emotional well-being of child).  Further evidence shows that Mother did not leave W.M. until she learned that D.M.F. had also become a victim.  *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D."); *In re M.R.J.M.*, 280 S.W.3d at 502 (child is endangered when environment creates potential for danger that parent is aware of but consciously disregards).  Based on this evidence, the trial court could have formed a firm belief or conviction that Mother knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being and that she engaged in a course of conduct that endangered the children.  *See* § 161.001(D), (E).  We overrule issues one and two.

**ANALYSIS**

Best Interest

In her third issue, Mother challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2).  A determination of best interest necessitates a focus on the child, not the parent.  *In re B.G.S.*, 479 S.W.3d at 927.  Appellate courts examine the entire record to decide what is in the best interest of the child.  *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013).  There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship.  *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[6]  "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'"  *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.— Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d at 27).  Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *See In re E.C.R.*, 402 S.W.3d at 249.  The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence.  *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).  We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest.  *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

We begin our analysis by noting that evidence supporting termination under one or more of the predicate grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the best interest of the children.  *See In re C.H.,* 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest).  Consequently, it is appropriate to consider the

---

[6] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

evidence recited above relevant to endangerment. Mother knew that W.M. was sexually abusing D.R.S., she continued to place D.R.S. in an environment where sexual abuse took place, and her conduct resulted in the sexual abuse of D.M.F. This evidence supports the best-interest finding.

The Department initially became involved with Mother and the children due to concerns regarding the family's living conditions and Mother's mental health. The evidence showed that Mother threatened suicide both before and at the time of the removal. She made those threats in the presence of the children, and in some instances, made her suicidal threats to the children themselves. Although Mother completed some services necessary to address the Department's concerns, she failed to demonstrate stability throughout the case. She moved multiple times and was unable to establish stable income or suitable housing for reunification with the children. In addition, Mother was arrested twice and convicted of animal cruelty offenses during the pendency of this case. She remained incarcerated at the time of the final hearing. The evidence also raised concerns regarding Mother's visitation history. At the time of trial, she had not visited D.R.S. for approximately one year and had not visited D.M.F. and D.L.F. for more than six months.

Evidence of a parent's unstable lifestyle may support a factfinder's conclusion that termination of parental rights is in a child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Likewise, lack of stability, including the inability to provide a stable home, supports a finding that a parent cannot adequately meet a child's emotional and physical needs. *In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston

14

[14th Dist.] 2014 no pet.); *see Doyle*, 16 S.W.3d at 398 (holding that parent's failure to provide stable home and provide for child's needs contributes to finding that termination of parental rights is in child's best interest). Mother's continued incarceration further subjected the children to uncertainty and instability. *In re M.L.*, No. 07-20-00195-CV, 2020 Tex. App. LEXIS 9483, at *16 (Tex. App.—Amarillo Dec. 4, 2020, no pet.) (mem. op.). (parent's imprisonment is a factor that may be considered in determining child's best interest.).

Stability and permanence are paramount considerations in raising children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In evaluating best interest, a factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20. Mother testified that she had recently secured a rent house with all bills paid and planned to move there after her release from prison. She testified that she intended to seek employment and, in the meantime, hoped to be available to D.R.S. emotionally and through written correspondence. Although Mother expressed reservations about D.R.S. living with R.P., she stated she would support that decision if it was what D.R.S. wanted. She also suggested that D.R.S. could live in a group home setting, such as the Boys Ranch, where she could participate in "horse activities and stuff." Mother did not articulate any specific plans for D.M.F. or D.L.F. other than "they do have an uncle that they could go to."

By the time of trial, the children had been in the Department's care for nearly eighteen months. During that time, they received therapy, medical care, and structured

15

care designed to address their trauma and developmental needs. All three children continued to participate in counseling and required psychotropic medication. Although the children had shown improvement, each had experienced significant behavioral challenges during the case. The Department's permanency plan provided for reunification of D.R.S. with R.P. and his wife and relative adoption for D.M.F. and D.L.F. The Department's plan would also allow the siblings to maintain contact with one another. The evidence concerning the children's placements and the permanency available through those placements supports the trial court's best-interest finding. *See In re J.D.B.*, 435 S.W.3d 452, 468 (Tex. App.—Dallas 2014, no pet.) (child's need for permanence is a paramount consideration in evaluating child's physical and emotional needs).

Viewing the evidence under the appropriate legal and factual sufficiency standards and in light of the relevant *Holley* factors, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. As such, we conclude the evidence is both legally and factually sufficient to support the trial court's best-interest finding. We overrule Mother's third issue challenging the best-interest determination.

## CONCLUSION

Having overruled the issues raised by Mother, we affirm the judgment of the trial court terminating Mother's parental rights to D.R.S., D.M.F., and D.L.F.


Judy C. Parker
Chief Justice

16